[No. 4976.   Decided June 23, 1904.]

## THE HENRY H. SCHOTT COMPANY, *Appellant,* v. STONE, FISHER & LANE, *Respondent.*[1]

SALES — REFUSAL OF PURCHASER TO COMPLETE SALE — AGREEMENT TO RETIRE FROM BUSINESS AND FOR SACRIFICE SALE OF STOCK—PURCHASER'S COVENANT TO KEEP UP STOCK DURING SALE—BREACH—MEASURE OF DAMAGES.   Upon the breach by defendant of a contract to purchase a stock of goods from the plaintiff, in which the defendant agreed to pay eighty-five per cent of the inventoried cost of the remaining stock after a sacrifice sale conducted under directions of the defendant, reducing the value thereof to $25,000, the defendant to keep up the stock during the sale, the measure of plaintiff's damages upon the defendant's refusal to take the remnant of the goods after the completion of the sacrifice sale, is the difference between the contract price and the value of the goods; hence it was proper to strike from the complaint claims for damage for loss of goods sold at the sacrifice sale, loss of customers by reason of failing to keep up the stock during the sale, and by reason of being unable to procure goods for the following trade, and loss to business reputation and financial credit.

SAME.   In such a case, it is error to strike from the complaint a claim for damages by reason of the unsalable condition of the remaining stock, because not kept up during the sacrifice sale; since the same is based on the difference between the actual value of the remnant of the stock and the price agreed to be paid, and the court was not justified in striking it, although it may have been pleaded on a different theory from the above.

SAME—LEASE—REFUSAL OF TENANT TO ACCEPT—MEASURE OF DAMAGES.   In such a case, the fact that the purchaser had also

1Reported in 77 Pac. 192.

agreed to rent the premises for a term at a certain rental, does not change the rules ordinarily applicable to a breach of contract for the sale of goods, or render the damages uncertain, since the measure of damages as to the lease is the difference between the rental value and the amount agreed to be paid.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered July 10, 1903, dismissing the action, upon striking the complaint.   Reversed.

*Graves & Englehart,* for appellant.

*Hudson & Holt* and *Kerr & McCord,* for respondent.

FULLERTON, C. J.—The appellant brought this action against the respondent to recover damages for a breach of contract.   The lower court, on the motion of the respondent, struck out, as immaterial and irrelevant, the several allegations of the complaint relating to the damages alleged to have been suffered because of the breach, and dismissed the action on the refusal of the appellant to plead further.   The case is here on the sufficiency of these allegations.

The contract, the breach of which is complained of, is set out in the complaint in the following language:

"That the plaintiff on or about the 10th day of October, 1902, and while engaged in carrying on its general merchandise business in said city of North Yakima, which said business was fully established, and had been carried on by it since about July, 1900, in said city, duly made and entered into a certain contract and agreement with the defendant above named wherein and whereby it was agreed by and between said plaintiff and said defendant that said plaintiff would sell its entire business, which it was then conducting in said city, together with the good will thereof, and would retire from said business in said city, and would sell its stock of merchandise and store fixtures then owned by it and used by it in conduct-

ing its said business in North Yakima, except its shoe, clothing, hat, crockery, tinware, and grocery business and stock, and such articles used in conducting the same. That said defendant at said time agreed to purchase the same, for the purpose of acquiring all the business, good will, stock, fixtures, etc., of said plaintiff in said business, and for the purpose of establishing said defendant in the said business of said plaintiff in said North Yakima, and for the purpose of getting said plaintiff to retire from its said business in North Yakima, and allowing said defendant to engage in said business in said North Yakima in its place and stead. The terms and conditions of which said agreement were as follows, to wit: That said plaintiff would immediately surrender the sale of its entire stock of goods, then held by it in its said stores, in said city of North Yakima, to said defendant, which would remark all of said stock of goods of the said plaintiff and sell the same for such prices as said defendant thought best and desired, and apply the proceeds of the sale, first, to pay current expenses and advertising expenses; second, accounts payable; third, bills payable. Said stock to be sold under the direction of said defendant as aforesaid until the same was reduced to the value of about twenty five thousand dollars, exclusive of shoes, clothing, hats, crockery, tinware and groceries; that said defendant should receive 1% commission on all sales made under its direction; that said defendant would supply all necessary new merchandise to keep up the said stock in a fair condition while said sales were being made, and receive as compensation for said stock so furnished the invoice price of the same with 10% added, the same to be payable monthly, and also receive the expenses of Mr. George Stone, the duly acting agent and president of said defendant, while engaged in working on said sales. In consideration of which said defendant agreed that when said stock had been so sold as to be reduced to the value of about $25,000, not including shoes, clothing, hats, crockery, tinware and groceries, that said defendant would receive and purchase the said remaining stock of said plaintiff and pay therefor the sum of eighty five cents on the dollar of the

inventoried cost of said remaining stock; said inventoried cost to be fixed between January 1st and January 15th, 1903, the said stock to be received and paid for in cash, at said time by said defendant. That said plaintiff then and there also agreed to transfer and convey all its said business, good will of the business, store fixtures, etc., except said crockery, hat, shoe, tinware, clothing and grocery stock and business, to said defendant at the agreed price of twenty seven hundred (2,700) dollars in addition to the sale of the above stock of about twenty five thousand dollars of merchandise, said defendant to have a lease of the premises then occupied by said plaintiff with its said business, exclusive of the departments used for shoe and groceries, for five years, at a monthly rental of two hundred (200) dollars. That said defendant should also have the refusal of the space then used by said plaintiff for its grocery department, at a monthly rental of twenty-five (25) dollars, for the term of five years, in so far as the influence of E. B. Moore and Henry H. Schott, stockholders in said plaintiff corporation, could be used to obtain the same. That said plaintiff and defendant then and there agreed, as a part of the consideration for the purchase of said business, store fixtures, good will of the business and merchandise by said defendant, that said plaintiff would retire from its said business in said North Yakima, and that said defendant would succeed to the same."

It is then alleged that the appellant, pursuant to such agreement, took control of the stock of goods mentioned about October 12, 1902, and placed the same on the market as a sacrifice sale at an average reduction of about twenty-five per centum of what the same were reasonably worth where they then were, and between that date and January 1, 1903, made sales amounting in all to $61,-539.70, reducing the stock to a cost value of between $25,000 and $26,000; that on the latter date the appellant, following instructions received from the respondent, proceeded to make an inventory of the goods remaining

on hand, which it shortly thereafter completed, and so informed the respondent, requesting the respondent at the same time to carry out the agreement; that the respondent, in reply thereto, notified the appellant that it would not further comply with the agreement, saying that the appellant could either retain the business or dispose of it elsewhere as it saw fit—that the transaction, in so far as the respondent was concerned, was closed and at an end, and that it would proceed no further towards a compliance therewith. The appellant further alleged that, up to the time the respondent repudiated the contract, it had faithfully and fully complied with all of its terms and conditions on its part to be performed, and stood ready to comply with all of its remaining conditions, had the respondent consented to carry out its part of the contract.

The items of damage claimed in the complaint because of the breach of the contract, and which were struck out by the trial court, were in substance these: (1) For loss on the goods sold at the sacrifice sale while the stock was being reduced to $25,000, being the difference between the amount received and their actual value, the sum of $20,-513.24. (2) For losses between October 15, 1902, and January 15, 1903, caused by the fact that its stock of goods was sold out and run down so low that it was unable to supply many of its customers, thereby losing its customers and profits on sales, etc., the whole aggregating $7,500. (3) For losses between January 15, 1903, and October 15, 1903, caused by the fact that the appellant was unable to procure suitable goods for the spring, summer, and fall trade, after the respondent gave notice that it would not perform its part of the contract, thereby losing many of its customers, and profits on goods it would

otherwise have made, aggregating the sum of $15,000. (4) For damages to its business reputation and financial credit with the wholesale houses and commercial agencies of the United States, aggregating $10,000.   (5) The allegation concerning the fifth item of loss was as follows:

"That when said defendant refused to purchase said business of said plaintiff and refused to receive and pay for said stock of merchandise, it left said plaintiff with a stock of merchandise on hand of the apparent value of about twenty five thousand (25,000) dollars; that said stock of merchandise consisted of remnants of a large stock of merchandise, which said plaintiff had on hand in the month of October, 1902, when said agreement was made with said plaintiff; that said stock so left was unsalable by reason of the fact that many of the articles necessary to be on hand and a part of said stock were missing; that said stock was, by reason of its having been so sold down and sold out by said defendant under said agreement, unsalable, and of a market value of not more than ten thousand (10,000) dollars; that the action of said defendant in selling said stock as aforesaid and reducing the same, depreciated the market value thereof to the injury of this plaintiff in the sum of ten thousand (10,000) dollars."

The complaint concluded with a demand for judgment for the several items above mentioned, which aggregate the sum of $63,013.24.

The argument, by which the appellant seeks to justify the several items of damage set out in its complaint, can hardly be better stated than counsel on its behalf have stated it in their brief.   They say:

"This was no mere sale of personal property; it was a contract containing several covenants to be kept and performed by The Henry H. Schott Company.   In order to carry out this contract, The Henry H. Schott Company was compelled to and did notify the wholesale houses with

whom they dealt that they would go out of business, thereby severing their business connection with the wholesale firms, from whom they purchased certain goods which could not be purchased elsewhere. They were compelled to and did notify the people who were in the habit of buying goods from them that they were going out of business.

"To reduce the stock they were compelled to, and did make a sacrifice sale, thereby losing several thousand dollars.

"When Stone, Fisher & Lane refused to comply with their part of the contract, The Henry H. Schott Company were compelled to re-establish their business relations with the wholesale houses at a loss. They were also without enough goods to continue their business, and they had lost heavily by making the sacrifice sale. They were losers by having a remnant stock of goods left on their hands, which could only be sold at a loss.

"The complaint in this action pleads a contract with several covenants and conditions to be kept and performed by The Henry H. Schott Company. It then pleads a breach on the part of Stone, Fisher & Lane, and then pleads actual losses by The Henry H. Schott Company by reason of said breach of Stone, Fisher & Lane.

"All the damages pleaded are the direct result of the breach by Stone, Fisher & Lane. Stone, Fisher & Lane had all the acts performed by The Henry H. Schott Company in contemplation. At the time the contract was entered into it was fully understood by Stone, Fisher & Lane that The Henry H. Schott Company would perform the acts alleged in the complaint to have been performed by it. Each party was fully informed as to all that was to be done by each party to carry out the contract."

Plausible as this reasoning may appear, when first presented to the mind, we cannot think it sound. It is not disputed that the contract had been performed, by both the parties thereto, down to the time the transfer was ready to be made. The respondent, to relieve itself from

any liability on account of the terms of the contract at that time, was only required to do three things, viz: (1) purchase the stock of goods then on hand at the rate of eighty five cents on the dollar of the inventoried cost of the same; (2) purchase the "business, good will of the business, store fixtures, etc.," at the agreed price of $2,700; and (3) enter into a lease of the store building for a term of five years at a rental of $200 per month. These being the only things the respondent was required to do in order to comply with the contract, it is plain that the damages suffered and recoverable by the appellant are such as were caused by the failure of the respondent to comply therewith; that is to say, the appellant is entitled to recover for any loss it sustained because of the failure of the respondent to purchase the remaining stock and business, good will of the business, store fixtures, etc., at the prices agreed upon, and to enter into a lease of the store building at the rent reserved for the time named.

As the utmost measure of the respondent's liability, had it taken the property, was the contract price, so the measure of its liability, after its refusal to take it and the appellant had elected to keep it, was the difference between the contract price and the actual value of the property, if the actual value was less than the contract price. On the failure of the respondent to comply with the contract the appellant, of course, had a choice of remedies; (1) it could store and hold the personal property subject to the respondent's order, tender a lease of the store room, and sue for the contract price; (2) it could sell the property, including the lease, after notice to the respondent, and recover the difference between the price received and the contract price; or (3) it could retain the property

as its own, and recover the difference between the market value of the same, at the time and place of delivery, and the contract price, if the market value was less than the contract price. But, as it elected to keep the property, it is clear that its measure of damages is found in the last of the three remedies mentioned.

The contract, as we view it, was nothing more than a contract relating to the purchase and sale of personal property, and the remedies for a breach of the contract are such as ordinarily apply in such cases. It is suggested, however, that, while this remedy is definite and certain in so far as the goods themselves and the good will of the business and store fixtures are concerned, it is uncertain when applied to the lease, and hence the rules ordinarily applicable to a breach of contract for the sale of personal property do not apply. But we think differently. The respondent agreed to take the lease at a fixed rate per month for five years. The damage sustained by its failure to take it, if any, is the difference between the actual rental value of the property and the amount the respondent agreed to pay as such rent, and is as capable of just admeasurement as is the loss on the personal property.

For these reasons, therefore, we are of the opinion that the court committed no error in striking from the complaint the allegations concerning items one to four inclusive, as we have numbered them above. With reference to the item numbered five, being paragraph eleven of the complaint, we think the court erred in striking it out. It was based upon the difference between the actual value of the remnant of the stock of goods, and the price the respondent agreed to pay for the same. As such, it was a legitimate item of damage, and one for which re-

covery could be had.   It may be, as the respondent suggests, that the appellant based its right of recovery even for this item on a different theory from that upon which we hold the item a legitimate one, but this would hardly justify the court in denying it the right to recover altogether.    Moreover, the respondent's motion was not directed to this paragraph of the complaint with the idea of having it made to conform to correct pleading, but on the theory that it stated a non-recoverable item of damage, and it was stricken out on that theory.   As we hold it states a recoverable item, clearly it was error for the court to strike it out.   The view we have taken of the pleading, however, may have rendered an amendment of the complaint desirable, and the remittitur will go with leave to amend, if the appellant so elects.

The judgment is reversed, and the cause remanded, with instructions to reinstate the case.

HADLEY, ANDERS, MOUNT, and DUNBAR, JJ., concur.